UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.

No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

---

In re:

BERNARD L. MADOFF,

                    Debtor.

---

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

                    Plaintiff,

v.

ASB BANK CORP.,

                    Defendant.

Adv. Pro. No. 11-02730 (CGM)

---

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Torello H. Calvani (on the papers)
        Marc E. Hirschfield
        David J. Sheehan

*Attorneys for Defendant, ASB Bank Corp.*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001
By:    Scott B. Schreiber (on the papers)
        Rosa J. Evergreen

Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
By:    Kent A. Yalowitz (on the papers)
        Daniel R. Bernstein
        Lucas B. Barrett


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion by the Defendant, ASB Bank Corp. ("ASB" or

"Defendant"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks

dismissal for lack of personal jurisdiction, failure to state a claim for relief due to the safe harbor

provision of the Bankruptcy Code, failure to allege that Defendant received customer property,

and failure to plead a claim for relief under Rule 8 of the Federal Rules of Civil Procedure.  For

the reasons set forth below, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on September 22, 2011.  Compl., ECF[1] No. 1.  Via the complaint ("Complaint"), the Trustee seeks to recover $119,655,424.in subsequent transfers made to ASB.  *Id.* ¶ 2; Stip., ECF No. 109.  The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry").  Compl. ¶ 2, ECF No. 1.  Fairfield Sentry is referred to as a "feeder fund" because the intention of the fund was to invest in BLMIS.  *Id.* ¶¶ 2, 6.

Defendant is the successor by merger to Atlantic Security Bank.  Def.'s Mem. 1 n.1, ECF No. 105.  At the time of the alleged transfers, Defendant was an investment firm incorporated in

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02730-cgm.

the Cayman Islands, with a parent company, Credicorp LTD., incorporated in Bermuda. *Id.* 2

n.3; Compl. ¶ 21, ECF No. 1; Trustee's Opp'n 5, ECF No. 110. Following BLMIS's collapse,

the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid

and recover fraudulent transfers of customer property in the amount of approximately $3 billion.

Compl. ¶ 34, ECF No. 1. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 39. As part of

the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent

J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property

estate. Compl. ¶ 39, ECF No. 1. The Trustee then commenced a number of adversary

proceedings against subsequent transferees like ASB to recover the approximately $3 billion in

missing customer property.

Defendant argues that the Trustee has failed to plead personal jurisdiction, improperly

incorporated by reference allegations necessary to allege avoidability of the initial transfers, and

failed to plausibly allege that ASB received customer property. Defendant further argues that the

Court should dismiss the complaint due to the Safe Harbor under Bankruptcy Code Section

546(e). For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

### Personal Jurisdiction

Defendant objects to the Trustee's assertion of personal jurisdiction. The Trustee argues

in the Complaint that ASB purposefully availed itself of the laws of the United States and New

York by knowingly directing funds to be invested with New York-based BLMIS through

Fairfield Sentry, receiving subsequent transfers of customer property from BLMIS by

withdrawing money from Fairfield Sentry, wiring funds to Fairfield Sentry through a bank in

New York, and traveling to meet with representatives of the Fairfield Greenwich Group in New

York City and Miami, Florida. *Id.* ¶ 6.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP

Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendant "knowingly direct[ed] funds to be

invested with New York-based BLMIS through Fairfield Sentry." Compl. ¶ 6, ECF No. 1. This

allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in

the pre-discovery stage of litigation. That being stated, this was not the only allegation made by

the Trustee.

At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

Defendant argues that the Trustee has failed to allege sufficient minimum contacts with the United States. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that Defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry" and "knowingly received transfers of Customer Property from BLMIS. . . . by withdrawing money from Fairfield Sentry[.]" Compl. ¶ 6, ECF No. 1. The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. No. 09-01239 ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference at paragraph 34 of this Complaint); *see, e.g.* Calvani Decl. Ex. 8, Fairfield Sentry Placement Mem., ECF No. 111 (explaining that "Bernard L. Madoff Investment Securities . . . serve as sub-custodians for certain assets of the Fund," and that at that time BLMIS had "approximately 95% of the Fund's assets under custody.").

The Trustee has submitted additional evidence in response to the motion to dismiss. Attached as exhibits to the Calvani Declaration, the Trustee has provided evidence that Defendant acknowledged in share application forms that it received and read Sentry Information

Memoranda, which explained Fairfield's relationship with BLMIS.  Calvani Decl. Ex. 7 at 10,

ECF No. 111 ("FGL has delegated the management of the Company's investment activities to

Bernard L. Madoff Investment Securities, a registered broker-dealer in New York."); *Id.* Ex. 18

at 2.

ASB employees visited New York to meet with partners of the Fairfield Greenwich

Group and discuss investments with BLMIS.  *Id.* Ex. 19, Fairfield Greenwich Group Email

Correspondence ("ASB has made a special request to visit Madoff. Please [sic] advise if there is

any possibility. The purpose of the meeting is to know Mr. Madoff and his organization.").

Fairfield Greenwich Group partners also met with a representative of the Defendant in Florida,

where those partners planned to "explain in detail the strategy and perspective of the [Fairfield

Investment] Fund."  *Id.* Ex. 20 at 2.  In November of 2003, representatives of ASB met with

Bernard Madoff at "Mr. Madoff's offices" in New York in order to "address [their] questions

related to Fairfield Sentry Limited."  *Id.* Ex. 25; *Id.* Ex. 26 (commenting on ASB's meetings with

Fairfield representatives and with Bernard Madoff).  ASB used bank accounts in New York to

send subscription payments Fairfield Sentry.  *Id.* Exs. 7, 18, 23, 30.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy."  *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against ASB for monies it received

from Fairfield Sentry.  Compl. ¶¶ 43–45, ECF No. 1.  These allegations are directly related to

investment activities with Fairfield and BLMIS.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the

defendants received as direct investors in a BLMIS feeder fund arose from the New York

contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to

New York, sending redemption requests to New York, and receiving redemption payments from

a Bank of New York account in New York, and were the proximate cause of the injuries that the

Trustee sought to redress).  The suit is affiliated with the alleged in-state conduct.  *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over ASB is reasonable and "comport[s] with fair play and substantial

justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations

omitted).  Factors the Court may consider include the burden on the defendant, the forum State's

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective

relief, the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering fundamental substantive

social policies.  *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. ASB has actively participated in this Court's litigation for over ten years. It is represented by highly competent U.S. counsel, filed claims in this SIPA litigation, and submitted to the jurisdiction of New York courts when it signed subscription agreements with Fairfield Sentry. The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to the subsequent transfer that originated with BLMIS. The Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent transfers at issue in this Case.

## 12(b)(6) Standard

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover nearly $120 million in subsequent transfers made to ASB by Fairfield Sentry.  Compl. ¶¶ 40–44, ECF No. 1; Stip., ECF No. 109.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or

mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent

transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a

subsequent transferee of that initial transferee, that is, that the funds at issue originated with the

debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018);

*see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC

115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11

U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial

intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the

subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re Sharp Int'l Corp.*),

403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36

(Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12

F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the

funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary

vital statistics – the who, when, and how much – of the purported transfers to establish an entity

as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading

stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is

avoidable, he is not required to avoid the transfer received by the initial transferee before

asserting an action against subsequent transferees. The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l,*

*Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against

Fairfield Sentry in adversary proceeding 09-01239. Compl. ¶ 34, ECF No. 1 ("The Trustee

incorporates by reference the allegations contained in the Fairfield Amended Complaint as if

fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the

avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy

trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a

trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.

Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,

the trustee's handicap increases, and even greater latitude should be afforded." *Picard v.*

*Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. ASB, like many other subsequent transfer defendants in this SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 85 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does not prejudice Defendant. On the other hand, dismissing this Complaint and permitting the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Amended Complaint, would prejudice all parties by delaying the already overly prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds' knowledge of BLMIS' fraud. Fairfield Compl. ¶¶ 314–18, Adv. Pro. No. 09-01239, ECF No. 286; *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

ASB has raised the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).

The safe harbor "is an affirmative defense, but it can be raised in the context of a motion to dismiss if the complaint and other documents that the Court can consider establish it and 'where the facts are not in dispute, or where there is already a sufficiently detailed factual record to decide whether the applicable statutory definitions are met, such that the application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings.'"  *Halperin v. Morgan Stanley Inv. Mgmt.* (*In re Tops Holding II Corp.*), No. 18-22279 (RDD), Adv. No. 20-08950 (RDD), 2022 WL 6827457, at *9 (Bankr. S.D.N.Y. Oct. 12, 2022) (quoting *Bankr. Estate of Norkse Skogindustrier ASA v. Cyrus Capital Partners*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021)). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).  However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320, Adv. No. 09-01239, ECF No. 286 ("Fairfield Sentry had actual knowledge of the

fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual

knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge

of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud

at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at

BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They

knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC

Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They

knew that BLMIS reported impossible, out-of-range trades, which almost always were in

Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit

BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff

refused to identify any of BLMIS's options counterparties. They knew their clients and potential

clients raised numerous due diligence questions they would not and could not satisfactorily

answer. They knew Madoff would refuse to provide them with honest answers to due diligence

questions because it would confirm the details of his fraud.  They knew Madoff lied about

whether he traded options over the counter or through the exchange. They knew they lied to

clients about BLMIS's practices in order to keep the money flowing and their fees growing. And

they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 546(e)*), No. 12-MC-115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013) ("*Cohmad*").  And, "to the extent that a defendant claims protection under

Section 546(e) under a separate securities contract," this Court was directed to "adjudicate those

claims in the first instance consistent with [the district court's] opinion."  *Id.*

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

ASB argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendant on account of securities contracts between BLMIS and Fairfield Sentry and between Fairfield Sentry and Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections).  Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendant's reliance on *Cohmad*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), is unavailing.  In *Cohmad*, Judge Rakoff laid out the requirement for recovery of a fraudulent transfer from a subsequent transferee: "the Trustee must first show that the initial transfer of that property by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions (e.g., 11 U.S.C. §§ 544, 547 & 548)."  *Id.*  This requirement is subject to a rule allowing a subsequent transferee to raise a Section 546(e) defense "even if the initial (or

mediate) transferee fails to raise a Section 546(e) defense." *Id.* There is "one caveat" to this rule: "to the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* As Judge Rakoff explained, this caveat follows from the general principles of recovery: "[a] defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)." *Id.* (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 707 (11th Cir.2005)).

Judge Rakoff has further clarified the inapplicability of the safe harbor to transfers such as those made to ASB. *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[*Cohmad*] simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."). Where Section 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Id.* To the extent that Defendant seeks to apply Section 546(e) to a transfer made in connection with a securities contract between it and the Fairfield Funds not involving BLMIS, this issue is "fact-intensive" and better addressed at a later stage of litigation. *Id.* *8.

Defendant raises *Fairfield III* in support of their argument that the safe harbor should bar these claims. *Fairfield Sentry Ltd. V. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-13164 (SMB), 2020 WL 7345988, at *5 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022). This argument fails for two reasons. First, and most obviously, *Fairfield III* was a holding in Fairfield Sentry's chapter 15 case, which is not

binding on the Court in this adversary proceeding.  Whereas the district court's decision

in *Cohmad*, which holds that the safe harbor does not apply in this exact situation, is binding on

the Court on this issue.  *Cohmad*, 2013 WL 1609154, at *10.  Second, the issue in *Fairfield III* is

not comparable.  Court found that the Liquidators had not met their pleading burden and were

not permitted to amend their complaints.  *Fairfield III*, 2020 WL 7345988, at *9 (Bankr.

S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint ***alleges*** that the [Fairfield] Funds were

duped, believing that their BLMIS investments were worth what the BLMIS monthly statements

showed. The Funds were the transferors and if they were duped, they could not have intended to

'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they

believed to be accurate.") (emphasis added).  In *Fairfield III*, Fairfield Sentry was the initial

transferor, not the initial transferee as it is here.  And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a

subsequent transferee.

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, "approximately

$120,168,691 of the money transferred from BLMIS to Fairfield Sentry was subsequently

transferred by Fairfield Sentry to Defendant ASB."  Compl. ¶ 40, ECF No. 1.

The exhibits attached to the Complaint provide Defendant with the "who, when, and how

much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018); Compl. Ex. D, ECF No. 1 (indicating the dates and amounts of the transfers in

question); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)

(dismissing for failure to plausibly imply that the initial transferee made any subsequent

transfers.).  The Fairfield Amended Complaint, which is incorporated by reference into this

complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.

Fairfield Compl. ¶ 89, Adv. Pro. No. 09-01239, ECF No. 286; *see also* Fairfield Compl. ¶ 91

("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield

Sentry ceded control of not only its investment decisions, but also the custody of its assets, to

BLMIS.").  The Complaint plausibly alleges that Fairfield Sentry did not have any assets that

were not customer property.

To the extent that Defendant argues that the Court must consider the aggregate amount all

of the subsequent transfer cases pending before this Court in order to determine the feasibility of

the allegations in this Complaint, that task is not required at this stage of the litigation.  The other

complaints have not been adopted by reference by the Trustee in this adversary proceeding and,

as such, are not within the Court's power to consider on a Rule 12(b)(6) motion.  *Williams v.

Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to

dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the

four corners of the complaint, to documents attached to the complaint, or to documents

incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d

768, 776 (2d Cir. 2002)).

The Trustee "can sue each transferee for [the amount of the initial transfer]. For this

reason, the aggregate subsequent transfer claim can greatly exceed the amount of the initial

transfer." *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014).  In order

to ultimately determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need to review financial documents in order to trace the monies to all

of Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation.  At this stage, the Trustee need only assert plausible allegations that

Defendant received BLMIS monies.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendant received customer property because Fairfield

Sentry did not have other property to give.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

**Dated: November 18, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**